[S. F. No. 15544. In Bank.—May 18, 1936.]

EVELYN DAM, a Minor, etc., et al., Appellants, v. LAKE ALISO RIDING SCHOOL et al., Respondents.

F. H. Dam, *in pro. per.*, for Appellants.

Bronson, Bronson & Slaven and Kirke La Shelle, Jr., for Respondents.

CONREY, J.—This cause has been submitted after argument pursuant to an order granting a hearing in this court, after decision by the District Court of Appeal, First District, Division One, affirming judgment of the trial court and also affirming an order refusing to strike defendants' memorandum of costs. The case was tried by jury, and judgment entered in conformity with the verdict of the jury in favor of the defendant Cornelia Van Ness Cress. For a statement showing the nature of the case as presented to the trial court, we adopt the following paragraph from the opinion of the District Court of Appeal:

"This is an action on behalf of a minor by her guardian *ad litem* for damages for personal injuries. The father of the minor joins as plaintiff to recover special damages. Unless otherwise indicated, the word 'plaintiff' herein will refer to the minor. The complaint alleged that the defendants conducted and maintained a riding school for ladies and girls; that on the date mentioned in the complaint defendants, for a valuable consideration, furnished and hired to the plaintiff a certain horse referred to as 'Koko' for the purpose of horseback riding; that the defendants knew or should have known that the horse was not a gentle saddle horse and was not safe or suitable or fit for the plaintiff to ride; that the horse was unruly, vicious, and dangerous, and would suddenly plunge and jump and bolt and become uncontrollable; that these characteristics were unknown to plaintiff; that when plaintiff rode the horse she was thrown violently from the saddle, resulting in the injuries set forth in the complaint. The complaint was so worded that the contract for hiring, from which an implied warranty of suitability may be inferred, is pleaded. In the same cause of action the complaint

contains allegations of negligence. A general demurrer to the complaint was overruled. The case could have been tried upon the theory that it might have been a tort or a breach of a contract upon an implied warranty. Seemingly the latter theory was adopted by consent of counsel and will be therefore so considered on appeal."

Four special interrogatories were submitted to the jury, of which the first reads as follows: "1. At the time of the accident was the horse ridden by the plaintiff, Evelyn Dam, a vicious, dangerous and unsuitable horse for the purpose of riding by plaintiff?" The jury answered "No" to this question. The answer to the first question being in the negative, no answer was required to the other three questions, so they need not be considered at this time.

From the foregoing it appears that appellants in presenting their case to the trial court relied upon a contract under which respondent Cress furnished and hired the horse to the plaintiff for the purpose of horseback riding, and upon the theory that the terms of the contract included an implied warranty that the horse was suitable and fit for the purpose for which it was hired. Accordingly appellants' cause of action depended upon proof of the further fact that the horse was unsuitable for the stated purpose and that by reason thereof plaintiff suffered the injuries of which she complains.

Assuming that the cause of action has been correctly described, and assuming that there was some credible evidence to sustain the special finding of the jury, it would appear that the general verdict and the judgment based thereon must be affirmed, unless appellants can show that in the course of the trial there were prejudicial errors or acts of misconduct which contributed to the rendition of a wrong verdict and so produced a miscarriage of justice by entry of the judgment. The District Court of Appeal pointed out that more than fifty acts, statements, rulings or decisions were assigned by appellants either as misconduct or as prejudicial error; and it was suggested by that court that the enumerated cumulative assignments of misconduct appeared to be frivolous, and that many of the claimed errors were such that even if the rulings were not strictly correct, yet it does not appear that contrary rulings would have been likely to have resulted in a different verdict. As to these matters, we find no sufficient reason for disagreement with the conclusions of the District Court of

Appeal. ██ Errors of a trial court in relation to matters of pleading, rulings on evidence, instructions to a jury or in relation to matters of procedure, do not justify the reversal of a judgment unless the court of review, after consideration of the entire case, becomes satisfied that such errors resulted in a miscarriage of justice. If counsel, in presenting appeals and in preparing their assignments of error, would keep in mind this fundamental principle, they would not only lighten the burden of the courts of appeal but would also relieve themselves of much futility in labor and expense. Counsel for appellants in his brief recognizes the principle above stated, but proceeds upon the assumption that a multitude of minor errors acquires the cumulative force of grave and prejudicial error. This might be possible when they establish a course of conduct from which the court can infer that the appellant was deprived of a fair trial. But the intelligence and spirit of fairness usually manifested by trial courts makes very exceptional the unfair conduct of a trial. We are unable to say that there was any such unfair trial in this case.

██ The foregoing conclusions reduce the case to those remaining questions which we find in the statement made by appellants, in their petition for hearing in this court, of the principal questions involved. In the first of these three questions appellants contend that a person, who occupies the dual role of livery stable keeper and conductor and instructor of riding classes for girls, impliedly warrants that a horse, hired to a customer who is a girl pupil riding in a class under the stable keeper's instruction and control, is suitable for the purpose for which it is hired. It is said that this point has not been passed upon in this state and appellants rely upon the decisions of eastern states and of the English courts. (For examples, see 12 A. L. R. 774, 778, 786.)

In *Conn* v. *Hunsberger*, 224 Pa. 154 [73 Atl. 324–326, 132 Am. St. Rep. 770, 16 Ann. Cas. 504, 25 L. R. A. (N. S.) 372] (quoted by appellants herein), it is said: "It is the duty of a livery stable keeper to inform himself of the habits and disposition of the horses which he keeps in his stable for hire, and if he knows that they are dangerous and unsuitable, or by the exercise of reasonable care could ascertain the fact, he is liable for any injuries to his customers resulting from their vicious propensities. The law will not permit him to close his eyes and ears, thereby remaining ignorant of the vicious habits

of his horses, and relieve him from liability for injuries to a customer resulting from such habits. ■ In his contract of hiring he impliedly engages that he knows, or has exercised reasonable care to ascertain, the habits of his horses, and says to his customer that the horse which he lets is safe and suitable for the purpose for which he has hired it. His warranty is against defects or vicious habits, which he knows, or by the exercise of proper care could know; and if he fails to exercise such care, and it occasions injury to his customer, he will not be relieved of liability, though he did not actually know the horse was unsuitable for the service. It is true a liveryman is not an insurer of the suitableness of a horse or carriage let to a customer, but he is bound to exercise the care of a reasonably prudent man to furnish a horse or carriage that is fit and suitable for the purpose contemplated in the hiring. . . . In the case at bar, therefore, the questions were whether the mare was vicious and unsuitable for the purpose for which she was hired, and whether the defendant knew, or by the exercise of reasonable care should have known, the fact. The burden of establishing both propositions was on the plaintiff.''

■ We are of the opinion that the foregoing statement by the Supreme Court of Pennsylvania in the Conn case exhibits the reasonable rule which should be approved and applied here. Under this rule the so-called implied warranty is not a warranty in that sense which insures the suitableness of the horse, but is only a contractual obligation assumed against reckless or heedless hiring out of a horse without reasonable care to ascertain the habits of the animal with respect to its safety and suitability for the purpose for which it is hired.

■ Assuming, then, that the contract of hiring in the instant case included the obligation hereinabove defined, we come to the second proposition stated by appellants in their petition for hearing, i. e., that in such a case it is not necessary that the bailee, asking damages for injuries caused by unsuitability of the horse for riding by the bailee, prove acts of misbehavior on the part of the horse prior to the accident. We agree with appellants that it is not always necessary for the bailee to prove actual acts of misbehavior on the part of the horse prior to the accident. But in some way the bailee must prove such facts as will justify a jury in finding that

at the time and place in question the horse was unsafe and unsuitable for the purpose for which it was hired. Here the evidence produced at the trial and the case as presented to the jury gave to appellants the opportunity to obtain a decision that the horse was unsafe and unsuitable for the purpose of the hiring. The jury on that issue found in favor of the respondent and that finding has support in the evidence. Concerning instructions to the jury, the reporter's transcript, page 389, contains the following statement: "It was stipulated by counsel for both parties that numerous instructions were asked by both sides which were refused by the court, but no point is made on the refusal of the court to give such instructions." As to the instructions given, notwithstanding some criticism by appellants, we do not find therein any error of which appellants reasonably may complain.

The third and last statement of principal questions involved, as set forth in the petition for hearing in this court, relates to the contention of appellants that the court erred in sustaining the objection to the following question addressed by appellants to the respondent: "Q. Before you left her (plaintiff's) home that day you told her mother, did you not, that you were insured, and that you would see that the accident was settled for?" We find no error in the court's ruling which, of course, was caused by the fact that the question included an admission by the witness that she carried insurance against such accidents. It is true that where the fact of insurance is inseparably connected with an alleged admission, and the admission is one which ought to be considered, then the objection to the question should be overruled. But here the fact of such insurance or of such statement concerning insurance might have been omitted without impairment of the true import of the question, which called for an admission by the witness that she had promised to see that the accident was settled for. This fact deprives of all importance the alleged error of the trial court.

Concerning the appeal from the order refusing to strike from the files the memorandum of costs, we adopt the opinion of the District Court of Appeal, as follows: "The cost bill is not included in the clerk's transcript on appeal. The motion to strike appears in a bill of exceptions, contains the body of the cost bill and the affidavit thereto, but does

not set forth the title of court and cause. The bill of exceptions contains the number of the action and the names of the parties plaintiff and defendant. We must assume, in the absence of evidence to the contrary, that the cost bill contained the same title of court and cause. The affidavit attached to the cost bill recites in part that the 'costs and disbursements are true and correct and have been necessarily incurred in this cause'. The affidavit is silent as to the names of the defendants or the plaintiffs, but 'this cause' can refer only to the case designated by the title of court and cause. At the time of trial the case against all defendants, except as to defendant Cornelia Van Ness Cress, was dismissed. Plaintiff was sufficiently informed as to the claim of costs, and the party defendant presenting the same. The motion to strike the cost bill from the files was properly denied."

The judgment is affirmed and the order refusing to strike costs is affirmed.

Shenk, J., Waste, C. J., and Thompson, J., concurred.

Rehearing denied.